REC'D MAR 1 1 2026

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA GREEN,

        Plaintiff,

vs.

ONEMAIN FINANCIAL GROUP, LLC,

        Defendant

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, ANDREA GREEN, by and through her undersigned counsel, hereby files this Complaint against Defendant, ONEMAIN FINANCIAL GROUP, LLC, and in support thereof alleges as follows:

### I. PARTIES

1.    Plaintiff, Andrea Green, is an adult individual residing at 1352 N 76th St, Philadelphia, PA 19151. Plaintiff's email address is dregreen627@gmail.com .Plaintiff is appearing pro se in this matter. Plaintiff is a "consumer" as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(c).

2.    Defendant, OneMain Financial Group, LLC ("OneMain"), is a limited liability company organized under the laws of Delaware with its principal place of business located at 1500 Garrett Rd, Ste 100, Upper Darby, PA 19082-4519.Defendant is a "person" and a "furnisher" of information as defined by the FCRA. Upon information and

COMPLAINT JURY TRIAL DEMANDED - 1

belief, Defendant was previously subject to enforcement action by the Consumer Financial Protection Bureau ("CFPB") in2023 for violations of consumer protection laws.

## II. JURISDICTION AND VENUE

3.This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

4.This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

5.Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and the Defendant resides and conducts business in this District.

## III. FACTUAL ALLEGATIONS

6.On or about June 18, 2025, Plaintiff Andrea Green obtained a secured installment loan from Defendant OneMain Financial Group, LLC, identified as Account #11073208. The principal loan amount was $16,248.81.

7.The loan was secured by Plaintiff's vehicle, a 2018 Toyota Camry (VIN:4T1B11HK3JU593067).

COMPLAINT JURY TRIAL DEMANDED - 2

8. The terms of the loan included a 60-month repayment term, an Annual Percentage Rate ("APR") of 25.67%, a monthly payment of $483.51, and total of payments amounting to $29,157.95.

9. Plaintiff made all scheduled monthly payments on time and in full from July 2025 through December 2025.

10. On or about January 2, 2026, Plaintiff's vehicle was involved in a collision, resulting in significant damage.

11. On or about January 13, 2026, Plaintiff's insurer, State Farm Insurance, issued check #113898909J in the amount of $15,837.64. The check was made payable directly to "OneMain Financial" as the lienholder.

12. Defendant OneMain Financial received the insurance check on or about January 13, 2026.

13. Despite receiving the check, Defendant NEVER cashed, deposited, or applied the $15,837.64 insurance payment to Plaintiff's loan account.

14. The $15,837.64 insurance payment was sufficient to reduce the loan balance to approximately $0.00, which would have made the account substantially current and satisfied the vast majority of the outstanding debt. Instead, by refusing to apply the insurance proceeds, Defendant has allowed the account balance to increase to $16,858 as of February 28, 2026, and the past due amount to balloon to $1,226.01 as of March 2026.

COMPLAINT JURY TRIAL DEMANDED - 3

15.Despite holding the uncashed insurance payment in its possession, Defendantreported Plaintiff's account with multiple "30 days past due" with a past due amount of $243 to all three major credit reporting agencies (Experian, Equifax, and TransUnion) in January 2026, with a date of first delinquency reported as January 31, 2026.

16.While holding the uncashed check, Defendant sent harassing text messages to Plaintiff demanding payment of $738.14.

17.These text messages were sent by a branch manager identified as "Beatriz, "who pressured Plaintiff for payment despite Defendant's possession of the insurance proceeds.

18.Defendant continued its false reporting in February 2026, escalating the delinquency status to "30-59 Days Past Due" with an increased past due amount of $246 and a balance of $16,858, as reported to Equifax on February28, 2026.

19. As of March 2026, while still holding the uncashed $15,837.64 insurance check, Defendant's online portal shows the account as having a "Past Due Payment" of $1,226.01 marked "Due Now," demonstrating the continued deterioration of the account solely due to Defendant's refusal to apply the insurance proceeds.

20.Upon information and belief, Defendant has stated that it refuses to cash or apply the insurance check because "the title was not satisfied," despite being the lienholder with a legal right and duty to accept and apply insurance proceeds for a damaged vehicle securing its loan.

COMPLAINT JURY TRIAL DEMANDED - 4

21.As a direct and proximate result of Defendant's false credit reporting, Plaintiff's credit score dropped significantly to a Vantage Score of 532.

22.Plaintiff has suffered severe and documented emotional distress as a result of Defendant's conduct. Plaintiff's son, Khalee Hassian King Jr., has provided a sworn affidavit attesting to witnessing Plaintiff's emotional decline, including depression, anxiety, difficulty sleeping, withdrawal, feeling overwhelmed, and constant worry about her financial situation and ability to obtain necessary transportation.

23.Plaintiff has suffered actual damages, including damage to her creditworthiness, inability to obtain credit on favorable terms, inability to secure transportation, severe emotional distress, anxiety, depression, sleep disturbances, and humiliation.

24.Defendant's conduct was willful, intentional, and in reckless disregard of Plaintiff's rights under federal and state law.

25.Defendant violated its duty under the Fair Credit Reporting Act to ensure the accuracy of information it furnishes to credit reporting agencies and to conduct a reasonable investigation of disputes.

26. Upon information and belief, Defendant has a history of consumer protection violations. In 2023, the Consumer Financial Protection Bureau filed a lawsuit against OneMain Financial alleging violations of the Consumer Financial Protection Act and other federal consumer protection laws, demonstrating a pattern and practice of unlawful conduct toward consumers.

## IV. EXHIBITS

Plaintiff attaches the following exhibits in support of this Complaint:

A. **Exhibit A:** Loan Agreement and Disclosure Statement (Account #11073208), dated June 18, 2025

B. **Exhibit B:** State Farm Insurance Payment Notice showing Check#113898909J for $15,837.64 issued January 13, 2026, payable to OneMain Financial.

C. **Exhibit C:** Bank records and/or documentation showing Check #113898909Jwas NOT CASHED or DEPOSITED by OneMain Financial

D. **Exhibit D:** Text messages from OneMain Financial branch manager "Beatriz "demanding payment while holding uncashed insurance check.

E. **Exhibit E:** Equifax Credit Report dated March 5, 2026 (Confirmation #6064601029), showing OneMain account reported as "30-59 Days Past Due "with balance of $16,858 and past due amount of $246.

F. **Exhibit F:** Experian Credit Report dated March 5, 2026

G. **Exhibit G:** TransUnion Credit Report dated March 6, 2026

H. **Exhibit H:** Screenshot of OneMain Financial online account portal dated March 2026, showing "Past Due Payment" of $1,226.01 marked "Due Now."

COMPLAINT JURY TRIAL DEMANDED - 6

I. **Exhibit I:** Affidavit of Khalee Hassian King Jr. (Plaintiff's son) attesting to Plaintiff's emotional distress, depression, anxiety, and sleep disturbances caused by Defendant's conduct.

## COUNT I VIOLATION OF 15 U.S.C. § 1681S-2(B) (FAILURE TO INVESTIGATE DISPUTE AND CORRECT INACCURATEINFORMATION)

27.Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

28.Under 15 U.S.C. § 1681s-2(b), upon receiving notice of a dispute from consumer reporting agency, a furnisher of information must investigate with respect to the disputed information, review all relevant information provided, and report the results of the investigation to the consumer reporting agency. See *Gorman v. Wolpoff & Abramson, LLP, 584F.3d 1147, 1154 (9th Cir. 2009); Chiang v. Verizon New England Inc., 595F.3d 26, 37 (1st Cir. 2010).*

29. If the investigation finds that the information is incomplete or inaccurate, the furnisher must report those results to all other consumer reporting agencies to which the person furnished the information. 15 U.S.C. § 1681s-2(b)(1)(D). see *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1060 (9th Cir.2002).

30.Defendant reported false and inaccurate information (specifically, that the account was "30 days past due") while holding an uncashed $15,837.64insurance payment that would have satisfied the alleged delinquency.

COMPLAINT JURY TRIAL DEMANDED - 7

31. Upon information and belief, Defendant failed to conduct a reasonable investigation after being notified of the dispute and failed to correct inaccurate information.

32. Defendant's violation of the FCRA was willful, rendering it liable for actual damages, statutory damages, and punitive damages under 15 U.S.C. § 1681n. A violation is willful when a defendant knowingly or recklessly violates the FCRA or acts with reckless disregard of its requirements. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

33. Alternatively, Defendant's violation was negligent, rendering it liable for actual damages under 15 U.S.C. § 1681o. See *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); Andrews v. Trans Union, LLC, 7 F. Supp. 2d 1056, 1067 (C.D. Cal. 1998).

34. Plaintiff is entitled to recover her costs and reasonable attorney's fees under 15 U.S.C. §§ 1681n and 1681o. See Cousin v. Trans Union Corp., 246 F.3d 359, 372 (5th Cir. 2001) ("Under the FCRA, a prevailing plaintiff is entitled to recover costs and reasonable attorney's fees."); *Littles v. Lawyers' Title Ins. Corp.*, 679 F. Supp. 2d 1007, 1019 (E.D. Mo. 2010).

## COUNT II VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES ANDCONSUMER PROTECTION LAW (73 PA. STAT. § 201-1 ET SEQ.)

COMPLAINT JURY TRIAL DEMANDED - 8

35. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

36. Defendant engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, including but not limited to:

a. Accepting a secured loan payment via insurance check and refusing to apply it to the consumer's account.

b. Reporting false delinquency information to credit bureaus while holding sufficient payment to cure the delinquency.

c. Engaging in collection activity and demanding payment while holding sufficient payment to cure the account.

d. Conduct likely to mislead consumers regarding their rights and obligations.

37. These acts constitute violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-2(4)(xxi), which prohibits engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. See *Commonwealth v. Monumental Properties, Inc.*, 329 A.2d 812, 817 (Pa. 1974). *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 149 (Pa. Super. Ct.2012).

38. Defendant's conduct was knowing and intentional.

COMPLAINT JURY TRIAL DEMANDED - 9

39. Plaintiff has suffered an ascertainable loss of money or property as a result of the use or employment by Defendant of these prohibited methods, acts, or practices.

40. Pursuant to 73 Pa. Stat. § 201-9.2, Plaintiff is entitled to recover actual damages, treble damages (up to three times the actual damages sustained), and reasonable attorney's fees and costs. See *Hunt v. U.S. Tobacco Co.*, 538 F.3d217, 221 (3d Cir. 2008); *Toy v. Metropolitan Life Ins*. Co., 863 A.2d 1, 10 (Pa.Super. Ct. 2004); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. Super. Ct.2001).

## COUNT III NEGLIGENCE (PENNSYLVANIA COMMON LAW)

41. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

42. Defendant owed Plaintiff a duty of reasonable care to:

a. Properly process, cash, and apply insurance proceeds received in its capacity as lienholder;

b. Accurately report credit information regarding Plaintiff's account; and

c. Refrain from false or misleading collection activity. See *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 769A.2d 696, 700 (Pa. Super. Ct. 2000) (establishing duty of care in financial relationships).

COMPLAINT JURY TRIAL DEMANDED - 10

43. Defendant breached these duties by receiving and refusing to deposit or apply the $15,837.64 insurance payment while simultaneously reporting a false delinquency and demanding additional payments.

44. Defendant's breach was the direct and proximate cause of Plaintiff's damage, including damage to her credit score, financial harm, and emotional distress.

45. Plaintiff is entitled to compensatory damages, costs, and interest. See *Althausex rel. Althaus v. Cohen* 756 A.2d 1166, 1169 (Pa. 2000). *Bugosh v. I.U. North Am., Inc.*, 971 A.2d 1228, 1232 (Pa. Super. Ct. 2009).

## COUNT IV NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## (PENNSYLVANIA COMMON LAW)

46. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

47. Defendant owed Plaintiff a duty of care arising from their lender-borrower relationship and Defendant's position as a furnisher of credit information.

48. Defendant breached that duty through its negligent handling of the insurance proceeds (failing to cash a substantial check) and its subsequent false credit reporting and collection harassment.

49. Defendant's breach caused Plaintiff severe emotional distress, anxiety, humiliation, and mental anguish.

50. Plaintiff's emotional distress was a foreseeable result of Defendant's conduct, as financial instability and credit damage are known to cause significant stress and anxiety.

51. Plaintiff is entitled to compensatory damages for her emotional distress, along with costs and interest. See *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 197(Pa. Super. Ct. 2008); *Kazatsky v. King David Mem'l Park, Inc.*

, 515 A.2d1217, 1223 (Pa. 1986) (recognizing negligent infliction of emotional distress claims under Pennsylvania law).

## COUNT V BREACH OF SECURED PARTY DUTIES UNDER UCC ARTICLE 9 (13 PA.C.S. § 9207)

52. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

53. As the secured party and lienholder on Plaintiff's 2018 Toyota Camry, Defendant had a security interest in the vehicle pursuant to the loan agreement dated June 18, 2025.

54. Under Pennsylvania's Uniform Commercial Code, specifically 13 Pa.C.S. §9207, a secured party must use reasonable care in custody and preservation of collateral in the secured party's possession. See *In re Excello Press, Inc.*, 890 F.2d 896, 905 (7th Cir. 1989); *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995) (discussing secured party's duties under UCC Article 9).

COMPLAINT JURY TRIAL DEMANDED - 12

55. When Plaintiff's vehicle was damaged in a collision on January 2, 2026, the insurance proceeds in the amount of $15,837.64 constituted "proceeds" of the collateral as defined under 13 Pa.C.S. § 9102. See *In re Delbridge*, 61 B.R.484, 490 (Bankr. E.D. Pa. 1986); 13 Pa.C.S. § 9102(a)(64) (defining "proceeds" to include "insurance payable by reason of the loss or nonconformity of, defect or infringement of rights in, or damage to, the collateral").

56. Defendant, as the secured party and named payment on the insurance check, had a duty to exercise reasonable care and commercial reasonableness in handling insurance proceeds. 13 Pa.C.S. § 9207(a); see Flagship Nat'l Bank v. GrayDistribution Sys., Inc., 485 S.E.2d 158, 161 (Ga. Ct. App. 1997); In re C.W.Mining Co., 477 B.R. 176, 189 (Bankr. D. Utah 2012).

57.Defendant breached its duties as a secured party by:

a. Failing to cash or deposit the insurance check #113898909J for$15,837.64.

b. Failing to apply the insurance proceeds to the secured debt as commercially reasonable;

c. Allowing the insurance check to remain uncashed while reporting the account as delinquent.

d. Demanding additional payments from Plaintiff while holding sufficient proceeds to satisfy the debt.

COMPLAINT JURY TRIAL DEMANDED - 13

58. Defendant's conduct was not commercially reasonable and violated its statutory duties under UCC Article 9. See *Citicorp Acceptance Co. v. Robison* ,782 F. Supp. 2d 1173, 1182 (D. Haw. 2011); 13 Pa.C.S. § 9610 (requiring secured parties to act in a commercially reasonable manner).

59. As a direct and proximate result of Defendant's breach of its secured party duties, Plaintiff suffered actual damages, including credit damage, emotional distress, and financial harm.

60. Plaintiff is entitled to recover compensatory damages, costs, and interest.

## COUNT VI CONVERSION (PENNSYLVANIA COMMON LAW)

61. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

62. The insurance proceeds in the amount of $15,837.64, represented by check#113898909J, were property in which Plaintiff had a legal interest and right.

See *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964) (establishing elements of conversion under Pennsylvania law).

63. The insurance proceeds were intended to satisfy Plaintiff's secured debt with Defendant and were made payable to Defendant as lienholder for the express purpose of being applied to Plaintiff's loan account.

64. Defendant received possession of the check on or about January 13, 2026, with the obligation to apply it to Plaintiff's debt.

COMPLAINT JURY TRIAL DEMANDED - 14

65. Defendant intentionally exercised unauthorized control over the insurance proceeds by:

    a. Refusing to cash or deposit the check;

    b. Refusing to apply the proceeds to Plaintiff's account;

    c. Retaining possession of the check without authorization;

    d. Depriving Plaintiff of the benefit and use of those funds to satisfy her debt.

66. Defendant's unauthorized exercise of control over the insurance proceeds was intentional and without Plaintiff's consent. See *Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165, 172 (E.D. Pa. 1997); *Liss v. Studeny*, 908A.2d 1296, 1301 (Pa. Super. Ct. 2006).

67. Defendant's conduct was done with the intent to deprive Plaintiff of her property rights in the insurance proceeds.

68. As a direct and proximate result of Defendant's conversion, Plaintiff has suffered actual damages, including credit damage, inability to satisfy her debt, continued accrual of interest and charges, emotional distress, and financial harm.

69. Defendant's conversion was willful and malicious, entitling Plaintiff to punitive damages. Pennsylvania law permits punitive damages where a defendant's conduct is "outrageous, due to defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 506 A.2d 330,334 (Pa.

1986); see also *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (Pa. 1991).

70. Plaintiff is entitled to recover the value of the converted property ($15,837.64), consequential damages, punitive damages, costs, and interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Andrea Green, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, OneMain Financial Group, LLC, and grant the following relief:

1. Actual damages in an amount to be proven at trial;

2. Statutory damages pursuant to 15 U.S.C. § 1681n of up to $1,000 per willful violation;

3. Punitive damages pursuant to 15 U.S.C. § 1681n for willful violations of the FCRA;

4. Treble damages pursuant to the Pennsylvania UTPCPL, 73 Pa. Stat. § 201-9.2;

5. Compensatory damages for emotional distress, humiliation, and mental anguish;

6. Damages for conversion in the amount of $15,837.64 plus consequential damages;

COMPLAINT JURY TRIAL DEMANDED - 16

7. Punitive damages for willful and malicious conversion;

8. Damages for breach of secured party duties under 13 Pa.C.S. § 9207;

9. Pre-judgment and post-judgment interest as allowed by law;

10. Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o and 73 Pa. Stat. § 201-9.2;

11. Injunctive relief requiring Defendant to:

a. Immediately cash and apply the $15,837.64 insurance payment to Plaintiff's account effective as of the date of receipt (January 13, 2026);

b. Correct all false credit reporting with all credit reporting agencies to show the account as current and/or paid;

c. Cease all collection activity against Plaintiff;

12. Trial by jury on all issues so triable; and

13. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: 03|11|26

COMPLAINT JURY TRIAL DEMANDED - 17

Respectfully submitted,

*Andrea Green*

Andrea Green, Pro Se

1352 N 76th St

Philadelphia, PA 19151

dregreen627@gmail.com

Plaintiff appearing Pro Se

Exhibit A

Docusign Envelope ID: B01C2936-C55B-4B9E-B8A9-F817F9E897A0

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**OneMain Financial.**

## LOAN AGREEMENT AND DISCLOSURE STATEMENT

| DATE 06/18/25 | ACCOUNT NUMBER 11073208 | TYPE OF LOAN (Alpha) H00 | DATE FINANCE CHARGE BEGINS TO ACCRUE 06/18/25 |
|---|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | BORROWER(S) NAME AND ADDRESS ("I","We") |
|---|---|
| ONEMAIN FINANCIAL GROUP, LLC<br>1500 GARRETT RD STE 100<br>UPPER DARBY, PA 19082-4519          610-544-6300 | ANDREA GREEN<br>1352 N 76TH ST<br>PHILADELPHIA, PA 19151 |

I have carefully read this entire Loan Agreement And Disclosure Statement and all related documents which include the Optional Products Disclosure Summary, Truth In Lending Insurance Disclosure and, if applicable, Personal Property Appraisal Form and GAP Waiver Addendum, all of which collectively constitute the "Agreement." This Loan Agreement and Disclosure Statement is divided into four sections: **A. Truth In Lending Disclosures; B. Loan Terms And Conditions; C. Arbitration Agreement And Waiver Of Jury Trial and D. Entire Agreement/Notices/Signature.** If I had any questions, I asked them before I signed these documents. By signing, I indicate my agreement to the statements, promises, terms, and conditions contained in the Agreement.

## A. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 25.67% | $ 12909.14 | $ 16248.81 | $ 29157.95 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 630.86 | 08/01/25 |
| 59 | $ 483.51 | monthly beginning 09/01/25 |

LATE CHARGE: [X]  If any payment is not paid in full within __10__ days after its due date, I will be charged __1.50__ % of the unpaid amount of the payment, but not more than $N/A__ or less than $__1.00__.

[ ]  If any payment is not paid in full within _____ days after its due date, I will be charged $_____ if the entire scheduled payment exceeds $_____ or $_____ if the entire scheduled payment is $_____ or less.

PREPAYMENT:  If I pay off early: [ ] I may  [X] I will not  have to pay a penalty for prepaying all or part of a loan's principal balance.
[X] I may  [ ] I will not  get a refund or credit of part of the finance charge for a prepayment in full.  I will not receive a refund or credit for a partial prepayment.

SECURITY:  I am giving Lender a security interest in: [ ] Unsecured  [X] Motor Vehicles  [ ] Other Collateral

| Year | Make | Model | VIN/Serial No. |
|---|---|---|---|
| 2018 | TOYOTA | CAMRY | 4T1B11HK3JU593067 |

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| | | | |
|---|---|---|---|
| 1. $ | 1148.81 | IUI Premium | Paid To INVOLUNTARY UNEMPLOYMENT INS. CO. * |
| 2. $ | 100.00 | MV Certificate of Title Fee | Paid To GOVERNMENT AGENCY |
| 3. $NONE | | | Paid To |
| 4. $NONE | | | Paid To |
| 5. $NONE | | | Paid To |
| 6. $NONE | | | Paid To |
| 7. $NONE | | | Paid To |
| 8. $NONE | | | Paid To |
| 9. $NONE | | | Paid To |
| 10. $NONE | | | Paid To |
| 11. $ | 6264.94 | | Paid To NAVY FEDERAL CREDIT UNION |
| 12. $ | 3548.00 | | Paid To Capital One |
| 13. $ | | | Paid To |
| 14. $ | | | Paid To |
| 15. $ | | | Paid To |
| 16. $ | | | Paid To |
| 17. $ | | | Paid To |
| 18. $ | | | Paid To |
| 19. $ | | | Paid To |
| 20. $ | | | Paid To |
| 21. $ | | | Paid To |
| 22. $ | | | Paid To |
| 23. $ | | | Paid To |
| 24. $ | | | Paid To |
| 25. $NONE | | | Total Paid on Prior Account(s) with Lender |

\* Lender may retain a portion of these amounts.

Amounts Paid to me

| | | | |
|---|---|---|---|
| 26. $ | 5187.06 | | Paid To ANDREA GREEN |
| 27. $ | | | Paid To |
| 28. $ | | | Paid To |
| 29. $ | | | Paid To |
| 30. $ | | | Paid To |
| 31. $ | | | Paid To |
| $ | 16248.81 | | Amount Financed (Sum of lines 1 - 24, 26 - 31) |
| $ | 150.00 | | Prepaid Finance Charges (itemized below) |

### PREPAID FINANCE CHARGES

| | | | |
|---|---|---|---|
| 1. $ | 150.00 | Service Charge | Paid To LENDER |
| 2. $NONE | | | Paid To |
| 3. $NONE | | | Paid To |
| 4. $NONE | | | Paid To |
| 5. $NONE | | | Paid To |
| 6. $NONE | | | Paid To |
| 7. $NONE | | | Paid To |
| 8. $NONE | | | Paid To |

## THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

*ANDREA GREEN*
_____          _____
Borrower                                  Co-Borrower

PAAAK1 (12-05-21) C.E. Agreement

## SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION
Page 1

Docusign Envelope ID: B01C2936-C55B-4B9E-B8A9-F817F9E897A0

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## B. LOAN TERMS AND CONDITIONS

**DATE OF LOAN.** 06/18/25 (the date the Finance Charge is scheduled to begin to accrue).

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the TRUTH IN LENDING DISCLOSURES, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full.

**SECURITY INTEREST.** To secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I hereby grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (a) the property identified in the "Security" disclosure of the TRUTH IN LENDING DISCLOSURES, including a purchase money security interest if property is being purchased with the proceeds hereof; (b) any substitutions or replacements of that property; and (c) the proceeds and products of that property ((a), (b), and (c) collectively referred to as the "Collateral"). I also hereby grant Lender a security interest in any unearned premiums from any credit insurance I have elected and purchased through Lender in connection with this transaction and any Required Insurance which protects the Collateral. Lender's security interest shall remain in effect, and subject to any modifications, renewals, extensions, and future advances thereof, until I have paid in full all amounts due under this Agreement. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a non-purchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. Unless prohibited by law I agree to pay the recording costs of your filing a financing statement, continuation statement and for releasing the security interest upon my payment in full.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that we are jointly and severally liable and that Lender may enforce this Agreement against all or any of us, but not in a combined amount exceeding the amount due.

Each of us under this Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Collateral securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Except as otherwise required by law, Lender does not have to notify Borrower before instituting suit against another Borrower if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Co-Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Co-Maker(s).

**AUTHORIZATION TO USE CREDIT REPORT.** By signing this Agreement, I authorize Lender to obtain, review and use information contained in my credit report in order to determine whether I may qualify for other products and services marketed by Lender. This authorization terminates when my outstanding balance due under this Agreement is paid in full. I may cancel such authorization at any time by writing the following: OneMain, P.O. Box 142, Evansville, IN 47701-0142. In order to process my request, Lender must be provided my full name, address, and account number.

**VOLUNTARY CREDIT INSURANCE.** As used in this Agreement, the term "credit insurance" includes credit life insurance, credit disability insurance, credit involuntary unemployment insurance, and credit property insurance. An affiliate of the Lender may provide the credit insurance that I voluntarily select. I acknowledge that Lender and/or its affiliates may profit from my purchase of voluntary credit insurance.

**REQUIRED INSURANCE.** I am required to maintain insurance in types, amounts, terms and deductible levels acceptable to Lender ("Required Insurance"). The Required Insurance must keep the Collateral insured against hazards for which Lender requires insurance. Such coverage includes, but is not limited to, loss by theft, vandalism, collision, fire, and any other risks of loss that would either impair Lender's interest in the Collateral or adversely affect the value of the Collateral. I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy obtained and paid for by me. I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender. Lender may not decline to accept any insurance provided by me unless it is for reasonable cause. Examples of reasonable cause include, but are not limited to, the financial condition of the insurer and the amount or type of coverage chosen. My choice of insurer will not otherwise affect Lender's credit decision or my credit terms. The types, amounts, and deductible levels that Lender requires under this Agreement may change during the term of the Agreement. Required Insurance must: (a) include a lender's loss payable provision; (b) name Lender, its successors and/or assigns, as loss payee; (c) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee; and (d) not include any disclaimer of the insurer's liability for failure to give such notice. I shall promptly give to Lender satisfactory proof (in Lender's reasonable estimation) of all Required Insurance and all receipts of paid premiums and renewal notices.

I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement or the security instrument are paid in full, my account is terminated, and Lender releases or discharges its security interest. In case of damage to or loss of the Collateral, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf.

If I do not keep Required Insurance under this Agreement in force at all times Lender may, but is not required to, in Lender's sole discretion, and at my expense, obtain insurance coverage to protect Lender's interest in the Collateral. I understand and agree that:

A. Lender is under no obligation to obtain any particular type or amount of coverage.

B. Lender-obtained insurance may, but need not, protect my interests.

C. Lender-obtained insurance may, but need not, pay any claim I make.

D. the cost of Lender-obtained insurance may be much more than the cost of insurance I could have obtained on my own.

E. any amounts disbursed by Lender under this Section to obtain insurance shall become additional debt of mine under this Agreement, secured by this Agreement or the Security Instrument. This additional debt will be payable upon notice from Lender to me requesting payment.

F. I am hereby authorizing Lender to release to, or obtain from, third parties any information necessary to monitor the status of Required Insurance.

G. Lender-obtained insurance may be purchased from an affiliate of Lender.

H. Lender, or its affiliate, may earn a profit by obtaining this insurance, to the extent permitted by applicable law.

I. Lender may, at any time and at its sole option, cancel Lender-obtained insurance.

J. Lender has a security interest in any unearned premiums from such insurance;

    1. I am hereby absolutely assigning to Lender any rights I may have to unearned Lender-obtained insurance premiums; and

    2. I am hereby authorizing and appointing Lender to be my attorney-in-fact for the purpose of cancelling the Lender-obtained insurance and applying the unearned premiums to reduce the account balance upon cancellation of said insurance.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** Where allowed by law, I hereby absolutely assign to Lender my rights to any Required Insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, and any other rights under policies covering the Collateral up to, but not in excess of the Total Balance due under this Agreement or security instrument. I agree that Lender may use any insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, to reduce the amounts that I owe under this Agreement or the security instrument, whether or not they are due. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds or unearned premium refunds paid to Lender do not satisfy all amounts that I owe Lender under this Agreement or the security instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the security instrument.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release, or cause to be released, all liens upon payment in full.

### SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

UXBB91 (05-05-24) C.E. Agreement - without Contract Rate      Page 2

Initials __N/A__ __N/A__
(Initials required for physical form)

Docusign Envelope ID: B01C2936-C55B-4B9E-B8A9-F817F9E897A0

Exhibit A

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** Other than the class action waiver described in subsection G of section C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL, the fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any third party without the express written consent of Lender.

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, Lender may consider you to be in default of this Agreement if any one or more of the following occurs:

A. I fail to make any payment, including, but not limited to the Total Amount Due, under this Agreement within 30 days of the payment due date.

B. I fail to do anything else I have agreed to do in this Agreement.

C. Any statement or representation I made in my credit application is untrue or incorrect.

D. I fail to provide Lender with proof of residence or Required Insurance within ten (10) business days after Lender's written request for this information.

E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.

F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.

G. Any police or governmental agency seizes or impounds the Collateral or starts forfeiture proceedings against the Collateral.

H. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

(For Kansas residents only: Lender believes the foregoing events B. through J. would significantly impair the prospect of payment, performance, or realization of collateral. The burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default of this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue interest from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.

B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges at the Contract Rate from the date paid until repaid in full to Lender.

C. Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.

D. Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses before all other amounts due hereunder.

E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.

F. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.

G. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights hereunder are cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral taken into possession as provided above.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement which, if mailed, shall be sent to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the remaining unpaid balance that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods or services from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement: **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

UXAC81 (12-08-19) C.E. Agreement

Page 3

Initials ___N/A___    ___N/A___
(Initials required for physical form)

Account Number 11073208

Docusign Envelope ID: B01C2936-C55B-4B9E-B8A9-F817F9E897A0

Exhibit A

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

☐ **INTEREST BEARING LOAN.** If checked, I agree to pay to the order of Lender, Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the Payment amounts shown in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. All payments will be applied in the following order: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest accrued to the date the payment is received and applied by Lender; and (c) if there is any remainder of the payment, the unpaid Principal balance. Interest on my loan accrues daily on the unpaid Principal balance. If I pay early, more of my payment will be applied to the unpaid Principal balance. If I pay late or miss payments, more of my payment will be applied to interest. This will delay my Principal reduction and cost me more in interest. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by the Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full, to the extent permitted by applicable law. Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☒ **PRECOMPUTED LOAN.** I agree to pay the Total of Payments in the amounts and on the dates shown in the Payment Schedule in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus any other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. I agree to pay interest on any late charges and any amounts advanced by Lender to purchase Required Insurance that remain unpaid after my final scheduled payment due date, computed at the Contract Rate, until paid in full. All payments will be applied in the following order: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; and (b) the Total of Payments amount. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the rate of 1.5% per month, until paid in full.

**EXTENDED FIRST PAYMENT DUE DATE CHARGE.** $ _____147.35_. If an amount is disclosed, I have requested an extended first payment due date and agree to pay the disclosed charge.

**PREPAYMENT.** I may prepay all or any part of my loan at any time. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

If my loan is a precomputed loan, and I prepay this loan in full, the amount I owe will be reduced by any unearned finance charges, computed by (a) if the term of this Agreement is sixty-one (61) months or less, the Rule of 78s method, as provided by the Pennsylvania Consumer Discount Company Act, or (b) if the term of this Agreement is more than sixty-one (61) months, the actuarial method. No refund of less than $1.00 will be made.

**LATE CHARGE.** I agree to pay any late charge described in the TRUTH IN LENDING DISCLOSURES herein.

**DEFERMENT CHARGE.** If my loan is a precomputed loan and I fail to make a payment with 10 days of its due date and I request a deferment of one or more payments, Lender may at its sole option defer the due dates of all remaining scheduled payments, and I agree to pay a deferment charge of the greater of $1.00 or 1.5% per month of the amount deferred for the period of deferment. No default charge on the deferred payment may be collected in addition to the deferment fee unless a subsequent delinquency occurs in the payment deferred.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $50.00.

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania and Federal law.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

PAAD81 (11-07-21) C.E. Agreement (Consumer Discount)          Page 4

Initials ___N/A___    ___N/A___
(Initials required for physical form)

Docusign Envelope ID: B01C2936-C55B-4B9E-B8A9-F817F9E897A0

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties that is more informal than a lawsuit in court. In arbitration, both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury. Arbitration allows for more limited discovery than in court, and an arbitrator's rulings are subject to limited review by courts. Arbitration takes place on an individual basis; class proceedings are not permitted. **UNDER THIS ARBITRATION AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION TO THE FULLEST EXTENT PERMITTED BY LAW.**

**1. CLAIMS AND DISPUTES COVERED.** Except as specified in this Arbitration Agreement, Lender and I agree that either party may elect arbitration of any Covered Claim. The term "Covered Claim" is intended to be broadly interpreted and includes the following claims or disputes, whether based in contract, tort, statute, equity, or any other legal theory:

- claims arising out of or relating to **any aspect of the relationship** between Lender and me, including, but not limited to, this Agreement or loan; any previous retail credit agreement ("Retail Contract") assigned to Lender; or any previous loan from or assigned to Lender;

- claims arising out of or relating to any documents, disclosures, advertising, or actions or omissions, including any allegation of fraud or misrepresentation, relating to this or any previous loan or Retail Contract made by or assigned to Lender or to any other of Lender's products or services;

- claims arising out of or relating to negotiations, performance, or breach of this or any previous loan or Retail Contract made by or assigned to Lender;

- claims arising out of or relating to the closing, servicing, collecting, or enforceability of any transaction involving Lender or me;

- claims arising out of or relating to any insurance product, service contract, membership plan, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender;

- claims arising out of or relating to communications by or on behalf of Lender, including claims under the Telephone Consumer Protection Act, do-not-call regulations, or similar laws or any other claim involving emails, faxes, text messages, or calls placed using automated technology or an artificial or prerecorded voice, including communications relating to offers of unrelated products or services; and

- claims arising out of or relating to the collection, retention, protection, use, disclosure, or transfer of any information about me or my accounts for any of Lender's products or services.

A Covered Claim is subject to arbitration regardless of when it arose, whether it is before the date of this or any prior Agreement between Lender and me (such as claims relating to advertising or disclosures or claims involving predecessors), or whether the claim arises after the termination of this Agreement. This Arbitration Agreement shall survive the termination of any loan or Retail Contract between Lender and me. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

**2. COVERED CLAIMS BY OR AGAINST THIRD PARTIES.** This Arbitration Agreement also covers claims brought by or against my and Lender's Third Parties. My Third Parties consist of any co-owners of my account, any authorized or unauthorized users or beneficiaries of my account or the loan, and each of those person's assignees, heirs, trustees, agents, or other representatives. The Lender's Third Parties consist of Lender's employees, officers, agents, or directors; Lender's affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender; any third parties that assigned Retail Contracts or other agreements to Lender; any third party that provides me any product or service which I purchased with the assistance or involvement of Lender; any third party that participates in efforts to collect a debt owed under or to repossess collateral pursuant to this or any other Agreement or loan issued by or assigned to Lender; any other third party providing services to or contracting with Lender or any of Lender's Third Parties; and any of the employees, officers, agents, directors, affiliates, predecessors, successors, or assigns of such third parties. Affiliate corporations are Lender's past, present, and future parent corporations, subsidiary corporations, and sister corporations, including each of those corporation's predecessors, successors, and assigns. Lender's affiliates include but are not limited to OneMain Consumer Loan, Inc., iLoan, OneMain Home Equity, Inc., OneMain Financial Services, Inc., and Yosemite Insurance Company.

**3. MATTERS NOT COVERED BY ARBITRATION.** All claims for damages must be arbitrated, but I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin or foreclosure, but instead may proceed in court for those judicial remedies. I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counterclaim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. In addition, instead of pursuing arbitration, either Lender or I also have the option to bring an individual lawsuit in small claims or equivalent court, so long as the action remains in that court and is not removed or appealed to a court of general jurisdiction. If these limitations on removal or appeal of small claims court actions are unenforceable, the dispute instead shall be arbitrated. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin or foreclosure or previously filing different claims in small claims court. In addition, disputes over a claim or whether a dispute can or must be arbitrated, including disputes over the validity and enforceability of this Arbitration Agreement or whether sections 5, 10, or 12 of this Arbitration Agreement have been violated, are for a court to decide. Nothing in this Arbitration Agreement precludes me from bringing issues to the attention of federal, state, or local agencies or law enforcement. Such agencies can, if the law allows, seek relief against Lender on my behalf.

**4. PRE-ARBITRATION NOTICE OF DISPUTE AND INFORMAL RESOLUTION.** A party who intends to seek arbitration must first send to the other party a written Notice of Dispute ("Notice"). The Notice to Lender may be sent by U.S. mail or professional courier service addressed to OneMain Financial, Legal Department, 100 International Drive, 16th Floor Baltimore, MD 21202 ("Notice Address"). The Notice to me may be sent to the address on file with my account. The Notice must include all of the following information: (a) my name; (b) my account number; (c) a description of the nature and basis of the claim or dispute; (d) an explanation of the specific relief sought and the basis for the calculations; (e) the signature of the party sending the Notice; and (f) if I am sending the Notice and have retained an attorney, my signed statement authorizing Lender to disclose my confidential account records to my attorney if necessary in resolving my claim.

After the Notice containing all of the information required above is received, within 60 days either party may request a conference to discuss informal resolution of the dispute ("Informal Settlement Conference"). If timely requested, the Informal Settlement Conference will take place at a mutually agreeable time by telephone or videoconference. I and a Lender representative must both personally participate in a good-faith effort to resolve the dispute informally without the need to proceed with arbitration. Any counsel representing Lender or me also may participate. The requirement of personal participation in an Informal Settlement Conference may be waived only if both Lender and I agree in writing.

Any applicable statute of limitations for the claims and relief set forth in a Notice will be tolled during period between the date that a Notice is received by the other party and the later of (i) 60 days after receipt of the Notice; or (ii) if an Informal Settlement Conference is timely requested, seven days after the request is withdrawn or the Informal Settlement Conference is completed (the "Informal Resolution Period").

**5. COMMENCING ARBITRATION.** An arbitration proceeding may be commenced by filing a demand for arbitration with the American Arbitration Association ("AAA") only if Lender and I do not reach an agreement to resolve the claim during the Informal Resolution Period. (If your Notice is part of a mass arbitration, section 10 contains additional requirements for commencing arbitration). A court will have authority to enforce this section 5, including the power to enjoin the filing or prosecution of arbitrations without first providing a fully complete Notice and participating in a timely requested Informal Settlement Conference. Unless prohibited by applicable law, the arbitration provider shall not accept or administer any arbitration unless the claimant has complied with the Notice and Informal Settlement Conference requirements of section 4.

**6. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the Consumer Arbitration Rules ("AAA Rules") of the AAA in effect at the time arbitration is started, as modified by this arbitration provision, and will be administered by the AAA. (If the AAA is not available or unwilling to administer arbitrations consistent with this Arbitration Agreement or you object to the AAA for good cause, another arbitration provider shall be selected by the parties or, if the parties cannot agree on a provider, by the court.) The AAA Rules are available online at https://www.adr.org/consumer or by writing to the Notice Address.

**7. SELECTION OF ARBITRATOR.** The AAA maintains lists of approved arbitrators. The AAA will provide Lender and me each a list of seven possible arbitrators. Lender and I will each have an opportunity to strike three persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator. The arbitrator must be a lawyer with at least 10 years of experience or a retired judge.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

UXAE71 (12-04-22) C.E. Agreement                    Page 5

Initials ___N/A___    ___N/A___
(Initials required for physical form)

Account Number 11073208

Docusign Envelope ID: B01C2936-C55B-4B9E-B8A9-F817F9E897A0

The Authoritative Copy of this record is held at NA3.docusign.net

**8. COSTS OF ARBITRATION.** The AAA charges certain fees in connection with arbitration proceedings. I may have to bear some of these fees; however, if I am not able to pay my share of those fees or think they are too high, Lender will consider any reasonable request to bear those fees, so long as I have fully complied with the requirements of sections 4, 5, and 10 for any arbitration I initiate. Lender will also bear any costs Lender is required to bear by law or by the terms of any other agreement with me.

**9. CONDUCT OF PROCEEDINGS.** All issues are for the arbitrator to decide, except as specified in this Arbitration Agreement. In resolving the parties' claims, the arbitrator shall apply all applicable substantive law and honor all privileges (such as the attorney-client privilege and attorney work product doctrine) recognized in law. The arbitrator may consider rulings in other arbitrations involving other claimants, but an arbitrator's ruling will not be binding in proceedings involving different claims. Except as specified in section 12 below, the arbitrator can award the same damages and relief that a court can award under applicable law. During the arbitration, the amount of any settlement offer made to or by you shall not be disclosed to the arbitrator until after the arbitrator determines the relief, if any, to which you are entitled. If you had fully complied with the Notice and Informal Settlement Conference requirements, did not disclose the amount of any settlement offers during the arbitration, and the arbitrator awards you more than was offered in the last written settlement offer to you before the arbitrator was selected, your recovery shall be $1,000 in lieu of any smaller award (the "Minimum Recovery"). In determining if an award is greater than the value of the last written settlement offer, the calculation should not include amounts offered or awarded for attorneys' fees and expenses. The arbitrator may resolve disputes and make rulings as to eligibility for and payment of the Minimum Recovery upon request from either party made within 14 days of the arbitrator's ruling on the merits.

**10. MASS FILINGS.** If 25 or more claimants submit Notices or file arbitrations raising similar claims and are represented by the same or coordinated counsel, all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved prior to arbitration as set forth in section 4. You agree to this process even though the arbitration of your claim might be delayed. In the first stage, the parties shall each select up to 10 cases per side (20 cases total) to be filed in arbitration and resolved individually in accordance with this arbitration agreement, with each case assigned to a separate arbitrator. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, administer, nor demand payment for AAA fees for arbitrations commenced in violation of this section 10. After the first stage of bellwether proceedings is complete, the parties shall engage in a single mediation of all remaining cases, and Lender will pay the mediation fee. If the parties are unable to resolve the remaining cases, the process of filing up to 20 cases in arbitration to be resolved individually by different arbitrators, followed by mediation, will be repeated. If any cases remain, the process will be repeated until all claims are resolved except that the total number of cases filed in arbitration each round shall increase to 50, and mediation is optional at the agreement of both sides. If these mass filing procedures apply to a claimant's Notice of Dispute, the Informal Resolution Period applicable to the claims and relief set forth in that Notice will be extended until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have the authority to enforce this section 10 and, if necessary, to enjoin the filing or prosecution of arbitrations or the assessment or collection of AAA fees. If, after exhaustion of all appeals, a court determines that the process in this section of staging the filing of cases in arbitration is unenforceable, then this section shall be severed and the cases may be filed in arbitration, but the Minimum Recovery in section 9 will be unavailable.

**11. ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims seeking or resulting in an award of $100,000 or more (including costs and attorneys' fees), any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the AAA. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision and award shall be subject to judicial review on the grounds set forth in the Federal Arbitration Act.

**12. REQUIREMENT OF INDIVIDUAL ARBITRATION.** The arbitration may award relief (including, but not limited to, damages, restitution, and declaratory and injunctive relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **Lender and I agree that each may bring claims against the other only in its or my individual capacity and not as a plaintiff or class member in any purported class, representative, or private attorney general proceeding.** Further, unless both Lender and I agree otherwise, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a class, representative, or private attorney general proceeding. If, after exhaustion of all appeals, any of these prohibitions on non-individualized relief; class, representative, and private attorney general claims; and consolidation is found to be unenforceable as to a particular claim or with respect to a particular request for relief (such as a request for injunctive relief), then the parties agree that such a claim or request for relief shall be decided by a court after all other claims and requests for relief are arbitrated.

**13. FUTURE CHANGES TO ARBITRATION AGREEMENT.** Notwithstanding any provision in this Agreement to the contrary, Lender and I agree that if Lender makes any future change to this Arbitration Agreement (other than a change to the Notice Address), I may reject any such change by sending Lender written notice with 30 days of the change to the Notice Address. This is not a rejection of arbitration altogether. By rejecting any future change, I am agreeing that we will arbitrate any Covered Claim in accordance with this version of the Arbitration Agreement.

## D. ENTIRE AGREEMENT/NOTICES/SIGNATURE

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

> **BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.** UXARB2 (07-15-12)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of all of the documents comprising this Agreement, and the Privacy Notice and agree to be bound thereby.

**Consent to be Contacted by Telephone.** I expressly consent and agree that Lender may contact me at any telephone number that I provide Lender now or in the future, including a number for a cellular phone or other wireless device and a number that I later convert to a cellular phone or other wireless device. I understand that this consent means that I agree to receive voice calls using automatic telephone dialing systems, prerecorded or artificial voice messages and text messages by or on behalf of Lender for transactional purposes, such as the collection and servicing of my loan account with Lender.

**NOTICE TO CONSUMER: 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.**

| | |
|---|---|
| x __N/A__ | x __ANDREA GREEN__ L.S. |
| Witness | Borrower   ANDREA GREEN |
| x __N/A__ | x_____ L.S. |
| Witness | Co-Borrower |
| x_____ L.S. | x_____ L.S. |
| Co-Maker | Co-Maker |
| Print Name: _____ | Print Name: _____ |

UXAF51 (12-04-22) C.E. Agreement                    Page 6

Exhibit B

 **StateFarm**®

Claim Number: 38-94W4-53V
Date of Incident: 01/02/2026

 Hello, Andrea. We made a payment on your claim.

Allow 7-10 days for mailed payments.

## Payment details

| | |
|---|---|
| **Date Issued:** | 01/13/2026 |
| **Paid to:** | ONEMAIN FINANCIAL |
| **Payment method/number:** | Paper/113898909J |
| **Amount:** | $15,837.64 Collision |

## Things you can do

- Use your Claims Hub through our app or online to view your claim, coverage, policy and full payment details anytime.

- Check out Claims FAQs about payments and more.

Your Claim Contact

Claim Team

statefarmclaims@statefarm.com
855-341-8184

MONDAY - FRIDAY : 7 am - 7 pm
SATURDAY : 8:30 am - 5 pm
SUNDAY : 9 am - 5 pm

Save the State Farm ® claims number to your phone or text **AUTO** to 62789 for your claim contact card.

Email intended for: Andrea Green

**Please do not reply to this message.** This email was sent from a notification-only address that cannot accept incoming emails. If you need to call us and you are deaf, hard of hearing, or do not use your voice to communicate, you may contact us via 711 or other relay services.

You received this email at DREGREEN627@GMAIL.COM because you have a State Farm policy/account or there is a policy/account for which you have legal authority to represent the named insured (e.g. business entity, trust or estate); or you requested information from State Farm. To unsubscribe from email communications, visit Manage Preferences.

For your protection, do not include sensitive personal information such as Social Security Number, credit/debit card number (financial account number), driver's license number, or health/medical information in an email. Call your State Farm agent or State Farm customer service to discuss sensitive information.

**Contact Us**      **Privacy Policy**    **Terms of Use**

**Like a good neighbor, State Farm is there.**®

  

State Farm Mutual Automobile Insurance Company

Exhibit C

## Payment amount                    $15,837.64

Includes:

Collision

Status

**Not cashed**

Date issued

**Jan 13, 2026**

Address

**601 Nw 2nd St, Evansville, IN 47708-1013**

Payment number

**113898909J**

Payment remarks

**VIN:    4T1B11HK3JU593067**

Payment method

**Check**

2

Exhibit D



Exhibit E



Credit Report

Date: March 05, 2026
Confirmation # 6064601029

Prepared for:

# ANDREA GREEN

## DID YOU KNOW?

*If you find something in your report that looks like a mistake, contact us at **equifax.com/personal/disputes** or call 888-EQUIFAX (888-378-4329) to start a new dispute or check the status of your dispute.*

*There are many types of consumer reporting agencies, including credit bureaus and specialty agencies. A list can be found by accessing the CFPB's website at: **consumerfinance.gov/consumer-tools/credit-reports-and-scores/consumer-reporting-companies/companies-list** Looking for telecommunications, pay TV, and utility data? That information is maintained by a different company, the National Consumer Telecom and Utilities Exchange (NCTUE), and can be accessed at: **nctue.com/consumer***

Prepared for:

**ANDREA GREEN**



Date: March 05, 2026
Confirmation # 6064601029

 **ONEMAIN**

601 NW 2ND St, Evansville, IN  47706-1010 | (844) 298-9773
Account Number: **\*3208** | Owner: **Individual Account**
Loan/Account Type: **Secured** | Status: **30 - 59 Days Past Due**

Date Reported: **02/28/2026** | Balance: **$16,858**
Credit Limit: ▫ | High Credit: **$16,398**

| | | |
|---|---|---|
| Date Opened: **06/18/2025** | Date of 1st Delinquency: **01/31/2026** | Terms Frequency: **Monthly** |
| Date of Last Activity: ▫ | Date Major Delinquency 1st Reported: ▫ | Months Reviewed: **8** |
| Scheduled Payment Amount: **$483** | Amount Past Due: **$246** | Deferred Payment Start Date: ▫ |
| Actual Payment Amount: ▫ | Charge Off Amount: ▫ | Balloon Payment Amount: ▫ |
| Date of Last Payment: **01/09/2026** | Date Closed: ▫ | Balloon Payment Date: ▫ |
| Term Duration: **60 Months** | Activity Designator: ▫ | Narrative Code(s): **125** |

### Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2026 | 30 | ▫ | ▫ | ▫ | ▫ | ▫ | ▫ | ▫ | ▫ | ▫ | ▫ | ▫ |
| 2025 | ▫ | ▫ | ▫ | ▫ | ▫ | ▫ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

| | | | | | | |
|---|---|---|---|---|---|---|
| ✓ | Paid on Time | 30 | 30 Days Past Due | 60 | 60 Days Past Due | 90 | 90 Days Past Due | 120 | 120 Days Past Due |
| 150 | 150 Days Past Due | 180 | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ▫ | No Data Available |

### 24 Month History

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 01/26 | $16,478 | $483 | $241 | 01/09/2026 | $243 | $16,398 | ▫ | 125 |
| 12/25 | $16,048 | $483 | $483 | 12/26/2025 | ▫ | $16,398 | ▫ | 125 |
| 11/25 | $16,147 | $483 | $241 | 11/28/2025 | ▫ | $16,398 | ▫ | 125 |
| 10/25 | $15,948 | $483 | $725 | 10/31/2025 | ▫ | $16,398 | ▫ | 125 |
| 09/25 | $16,276 | $483 | $483 | 09/19/2025 | ▫ | $16,398 | ▫ | 125 |
| 08/25 | $16,355 | $483 | $483 | 08/22/2025 | ▫ | $16,398 | ▫ | 125 |
| 07/25 | $16,428 | $483 | $389 | 07/18/2025 | ▫ | $16,398 | ▫ | 125 |
| 06/25 | $16,817 | $483 | ▫ | ▫ | ▫ | $16,398 | ▫ | 125 |

| Narrative Code | Narrative Code Description |
|---|---|
| 125 | Secured |

Exhibit F

Prepared For

# ANDREA GREEN

**Personal & Confidential**

**Date Generated** Mar 5, 2026

**Report Number** 0227-2848-20

# At a Glance    43 Accounts    0 Public Records    9 Hard Inquiries

## Personal Information

2 Names          4 Addresses          4 Employers          4 Other Records

Because your personal information is reported by you, your creditors, and other sources, it's typical to see small variations in reported personal information, like names and addresses. For security reasons, many of these items can't be disputed online, but don't worry—they don't affect your credit score.

## Names

**ANDREA GREEN**

Name ID #1

**ANDREA D GREEN**

Name ID #23472

# ONEMAIN

## POTENTIALLY NEGATIVE

### Account Info

| | |
|---|---|
| Account Name | **ONEMAIN** |
| Account Number | **625106XXXXXXXXXX** |
| Account Type | **Secured Loan** |
| Responsibility | **Individual** |
| Date Opened | **06/18/2025** |
| Status | **Open. $246 past due as of Feb 2026.** |
| Status Updated | **Jan 2026** |
| Balance | **$16,858** |
| Balance Updated | **02/28/2026** |
| Recent Payment | **-** |
| Monthly Payment | **$483** |
| Original Balance | **$16,398** |

Exhibit F

| Highest Balance | - |
| Terms | 60 Months |

 **Payment History**

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2026 | 30 | 30 | — | — | — | — | — | — | — | — | — | — |
| 2025 | — | — | — | — | — | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

✓ Current / Terms met     30 Past due 30 days

**Payment history guide**

30 days past due as of Feb 2026, Jan 2026

By Sep 2032, this account is scheduled to go to a positive status.

**Balance Histories**

| Date | Balance | Scheduled Payment | Paid |
|---|---|---|---|
| Jan 2026 | $16,478 | $483 | $241 on 1/9/2026 |
| Dec 2025 | $16,048 | $483 | $483 on 12/26/2025 |
| Nov 2025 | $16,147 | $483 | $241 on 11/28/2025 |
| Oct 2025 | $15,948 | $483 | $725 on 10/31/2025 |
| Sep 2025 | $16,276 | $483 | $483 on 9/19/2025 |
| Aug 2025 | $16,355 | $483 | $483 on 8/22/2025 |
| Jul 2025 | $16,428 | $483 | $389 on 7/18/2025 |
| Jun 2025 | $16,817 | $483 | $0 |

**Additional info**

The original amount of this account was $16,398

**Contact Info**

| Address | PO BOX 1010,<br>EVANSVILLE IN 47706 |
| Phone Number | (844) 298-9773 |

Case 2:26-cv-01639-JP   Document 1   Filed 03/11/26   Page 32 of 38

Exhibit G

Case 2:26-cv-01639-JP    Document 1    Filed 03/11/26    Page 33 of 38

---

Personal Credit Report for:

**ANDREA GREEN**

File Number:

**426905820**

Date Created:

**03/06/2026**

---

## Start a dispute request online 🔗.

If you are experiencing a financial hardship related to a public health emergency or your personal circumstances, you can add a consumer statement 🔗 to your credit file to explain your situation.

## 👤 Personal Information

You have been on our files since 04/01/1987 . Your SSN has been masked for your protection.

**Credit Report Date**

03/06/2026

**Social Security Number**

XXX-XX-8758

**Date of Birth**

06/27/1980

**Name**

ANDREA GREEN

## Addresses

Exhibit G

Filed 03/11/26 Document 1 Case 2:26-cv-01639-JP

**ONEMAIN**
625106001107****

Account Information

| | |
|---|---|
| Address | PO BOX 1010 EVANSVILLE, IN 47706 |
| Phone | |
| Date Opened | 06/18/2025 |
| Responsibility | Individual Account |

Exhibit G

| | |
|---|---|
| Account Type | Installment Account |
| Loan Type | SECURED |
| Date Updated | 02/28/2026 |
| Payment Received | $0 |
| Last Payment Made | 01/09/2026 |
| Pay Status | >Account 30 Days Past Due Date< |
| Terms | $483 per month, paid Monthly for 60 months |
| High Balance (Hist.) | High balance of $16,398 from 06/2025 to 02/2026 |
| Estimated month and year this item will be removed | 12/2032 |

Payment History

| June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 |
|---|---|---|---|---|---|
| Balance $16,817 | Balance $16,428 | Balance $16,355 | Balance $16,276 | Balance $15,948 | Balance $16,147 |
| Past Due $0 | Past Due $0 | Past Due $0 | Past Due $0 | Past Due $0 | Past Due $0 |
| Amount Paid $0 | Amount Paid $389 | Amount Paid $483 | Amount Paid $483 | Amount Paid $725 | Amount Paid $241 |
| Scheduled Payment $483 | Scheduled Payment $483 | Scheduled Payment $483 | Scheduled Payment $483 | Scheduled Payment $483 | Scheduled Payment $483 |
| Rating OK | Rating OK | Rating OK | Rating OK | Rating OK | Rating OK |

| December 2025 | January 2026 | February 2026 |
|---|---|---|
| Balance $16,048 | Balance $16,478 | Balance $16,858 |
| Past Due $0 | Past Due $243 | Past Due $246 |
| Amount Paid $483 | Amount Paid $241 | Amount Paid $0 |
| Scheduled Payment $483 | Scheduled Payment $483 | Scheduled Payment $483 |
| Rating OK | Rating 30 | Rating 30 |

Exhibit H

5:44

**OneMain**   Account Summary

## CHECK FOR NEW OFFERS

See if you qualify for more money [4]. Checking your offers won't impact your credit score!

CHECK FOR OFFERS

# Current Payment

# Past Due Payment

Due Now

# $1,226.01

Make Additional Payment

Your next payment will be due **Apr. 01, 2026**


Home


•


Trim

2

Exhibit I

# AFFIDAVIT OF EMOTIONAL SUPPORT

State of Pennsylvania
County of Philadelphia

I, Khalee Hassian King Jr , being duly sworn, depose and state the following:

1. I am the son of Andrea Green. I am over the age of 18 and competent to make this affidavit.

2. I am writing this statement to explain what I have personally witnessed regarding my mother's emotional and mental well-being following a negative credit report entry placed by OneMain Financial.

3. After OneMain Financial reported a late payment on her credit report—regarding a payment they claim was not made—my mother has experienced a noticeable emotional decline. From what I understand, her insurance company issued a check related to the vehicle loan, and OneMain Financial has possession of that check but has refused to cash it because they state the title was not satisfied. Despite this, they placed a negative remark on her credit report.

4. Since this occurred, I have personally observed my mother struggling with depression and anxiety. She has had difficulty sleeping and often stays awake worrying about her financial situation. She has expressed deep concern about how this negative mark will affect her ability to obtain another vehicle, which she needs for daily responsibilities.

5. My mother has always taken pride in handling her financial obligations responsibly. Seeing her feel helpless and stressed over a situation she believes is unfair has been heartbreaking. Her mood has changed significantly—she appears withdrawn, overwhelmed, and constantly anxious about her credit and future stability.

6. I am providing this affidavit as a statement of emotional support and as a truthful account of what I have witnessed. The stress caused by this credit reporting issue has had a real and serious emotional impact on her well-being.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this __7__ day of __March__ , 20__26__.

_Khalee K Jr_
Khalee H King Jr
1352 N 76 St
Philadelphia, PA 19151

Subscribed and sworn before me on this __7__ day of __March__ , 20__20__.

_____
Notary Public
My Commission Expires: __10/23/29__

Commonwealth of Pennsylvania - Notary Seal
KHALEEF R MURRAY, Notary Public
Philadelphia County
My Commission Expires 10/23/29
Commission Number 1372570